**CHAMBERS, ESTATE OF, In re**

Ohio Appeals, 2nd Dist, Montgomery Co.

No. 1543.   Decided June 30, 1939.

422

Cowden & Cowden, Dayton, for beneficiaries and present fiduciary.

Clifford R. Curtner, Dayton, for Massachusetts Bonding Company.

## OPINION

By BARNES, J.

The above entitled cause is now being determined as an error proceeding by reason of two appeals on questions of law from the judgment of the Court of Common Pleas of Montgomery County, Ohio.

The controversy originated in the Probate Court of Montgomery County, Ohio, where the beneficiaries filed exceptions to the 10th account filed by the administrator of Daniel I. Harshman, the latter having been administrator d.b.n., w.w.a. of the Chambers Estate from February 24, 1910, until his death on May 11, 1937. The beneficiaries' exceptions also ask that the 8th and 9th accounts be opened up so as to include errors and mistakes therein.

The 8th account was filed May 29, 1928, and covered the period of January 1, 1925, to December 31, 1927, a period of three years. This account was settled July 1, 1928.

The 9th account was filed April 9, 1931, covering the period from January 1, 1928, to December 31, 1930, a period of three years, and was settled by the Probate Court on June 1, 1931.

No further reports were made to the court by Daniel I. Harshman until his death in May, 1937.

Joining with the beneficiaries as exceptors, was the Winters National Bank and Trust Company, administrator, d.b.n., w.w.a., of the Chambers estate, having been so appointed on May 14, 1937.

At the time of Daniel I. Harshman's appointment as successor fiduciary, he duly provided a surety company's bond. On March 19, 1918, the Massachusetts Bonding and Insurance Company was substituted as surety on the official bond of the said Daniel I. Harshman, and continued to so act until the death of said administrator. This Bonding Company also filed exceptions to the 10th account on the stated ground that

the administrator of the Daniel I. Harshman estate had failed to enter in his account or make claim for administrator's compensation for the period following the account period designated in the 9th account up to the date of the death of Daniel I. Harshman.

The Robert Chambers estate had been active in the Probate Court for a great many years.

Robert Chambers died in May, 1876, leaving a last will and testament which was admitted to probate in the Montgomery County court, and which provided in Item 13 that the executors would convert all the residuary estate into cash, invest the same, distribute the income thereof equally among testator's children, and upon the death of said children pay over the corpus of said estate to the issue of said children.

All of the testator's children died without issue except two daughters, Margaret J. Schieble and Mary C. Calef, both of whom are now living and have living issue.

The two surviving daughters are each the owners of an undivided one-half interest for life in the income of the corpus of said estate, and their respective children are the prospective owners of the corpus, subject to the income rights of the two daughters. The estate has been kept open for the sole purpose of administering this Item 13, and several successor administrators d.b.n. have succeeded the original appointees, made in 1876.

In May, 1936, Daniel I. Harshman admitted to Mr. Harry L. Munger, of the law firm of Munger and Kennedy, attorneys for said administrator d.b.n. that there were discrepancies in the affairs of said estate.

On August 31, 1936, in order to prepare an accurate account of the affairs and on application by Mr. Harry L. Munger, an audit was ordered to be made of the accounts and records of the said Daniel I. Harshman. A report of the audit, dated December 14, 1936, addressed to the Probate Court, showed a very substantial shortage in the assets of the estate, which according to the report, resulted from unauthorized withdrawals of cash and securities made by Harshman.

On April 20, 1937, counsel for the beneficiaries served Harshman by registered mail with a request that he resign as administrator. Harshman, having failed to resign, an application for his removal as such administrator was filed in the Probate Court by Margaret J. Schieble and Mary C. Calef, on April 23, 1937. A hearing was held on May 11, 1937, and at the close thereof the court orally directed that Harshman be removed, but before the order was journalized, Harshman died by his own hand.

Three days later, on May 14, 1937, the Winters National Bank and Trust Company of Dayton, Ohio, was appointed successor administrator d.b.n., w.w.a., of the estate of Robert Chambers, deceased, and said bank immediately qualified as such fiduciary.

On June 3, 1937, the Winters Bank, as such successor administrator of the Chambers estate, in its capacity as a creditor of the estate of Daniel I. Harshman, deceased, made application to the Probate Court for the appointment of Philip R. Becker as administrator of the estate of Daniel I. Harshman, deceased. Mr. Becker was duly appointed, the widow and next of kin of Daniel I. Harshman having waived the right to administer on the estate, said waivers being filed in the Probate Court. Becker in his capacity as administrator of the Harshman estate and pursuant to the terms of §10506-54, GC, filed in the Probate Court on July 7, 1937, the 10th and final report and account of Harshman's administration of the estate of Robert Chambers, deceased, which report covered the perod from January 1, 1931, to the date of Harshman's death, which was May 11, 1937. This report showed a very substantial shortage in the assets of the Chambers estate.

On July 19, 1937, the living tenants, remainder men and the successor administrator filed the exceptions upon which the present litigation is founded.

The date of hearing the exceptions was set for September 7, 1937, and the Massachusetts Bonding and Insurance

Company, surety upon the official bond of Harshman, as administrator d.b.n., was given notice of the filing of such exceptions and the date of the hearing, by registered mail. By consent of all interested parties, the date of the hearing was postponed to September 21, 1937.

On September 16, 1937, the beneficiaries and successor administrator d. b.n., filed supplemental exceptions to the 10th and final account, asking for relief with respect to a certain mortgage investment, on which the successor fiduciary had the day before learned a loss would be sustained by the estate.

On September 18, 1937, the Surety Company filed a demurrer to the exceptions, based on a variety of grounds, and after several amendments to the exceptions made by leave of court, said demurrer was overruled in all its parts by an entry filed September 21, 1937.

On the same day the Surety Company filed both an answer to the exceptions previously filed and exceptions in its own right which were directed to the 10th and final report of Philip R. Becker, administrator of the estate of Daniel I. Harshman, deceased. The exceptions were heard before the Probate Court, and the court's decision thereon was journalized on February 23, 1938.

The exceptions filed by the beneficiaries and the successor administrator d.b.n., were sustained in part and overruled in part.

The exceptions filed by the Surety Company were overruled in their entirety.

On March 14, 1938, the Massachusetts Bonding and Insurance Company filed in the Probate Court notice of appeal to the Common Pleas Court. On April 8, 1938, pursuant to leave granted by the Common Pleas Court, the Winters National Bank and Trust Company, Dayton, Ohio, successor administrator, filed amended supplemental exceptions to said 10th and final account. This exception also asked relief with respect to a certain mortgage investment wherein it was claimed that a loss would inure to the estate through the negligence of Harshman in his failure to collect at a time when the collection could have been made.

The character of appeal to the Common Pleas Court called for a de novo hearing, which was had. The original demurrer filed in the Probate Court by the Bonding Company was again presented and overruled in the Common Pleas Court. The decision of the Common Pleas Court was journalized September 16, 1938, and was substantially the same judgment as had been obtained in the Probate Court. Both parties filed motions for a new trial, which were duly overruled. Both sides of the controversy gave notice of appeal to this court.

Very able and comprehensive briefs have been filed by counsel representing the respective parties.

Certain preliminary questions may properly be determined before considering the exceptions on their merits.

Counsel for the Surety Company have presented these various questions at all stages of the proceeding, and thereby has preserved the record so that the questions come squarely to us. We will not necessarily consider these matters in the order set out in the assignment of errors or the briefs.

We first consider the question urged and argued that Philip R. Becker was improperly appointed as administrator of the estate of Daniel I. Harshman, deceased.

This contention is based upon two grounds:

1. That there were no assets in the estate of Daniel I. Harshman.

2. Defects in the records of the Probate Court.

The argument is further made that by reason of these irregularities and defects the purported appointment is a nullity and hence there was no authority to prepare and file a purported 10th account.

Counsel for the beneficiaries and successor fiduciary counter with the proposition that the objections are technical, containing nothing of substance, and, further, have no standing in court by reason of being a collateral attack

to the judgment of the Probate Court having jurisdiction of the subject matter.

The application for appointment listed assets of the Daniel I. Harshman estate in the sum of $1000.00. As heretofore stated, the widow and next of kin signed waivers of right to the appointment, which waivers were duly filed.

During the progress of the hearing on the exceptions, when Becker was on the stand, it was drawn out through cross-examination, that he had been unable to find any assets in the Harshman estate.

From this showing counsel for the Bonding Company in this proceeding moved for removal of Becker as administrator and the dismissal of further hearing on the exceptions. This motion was overruled.

It is our conclusion that the Bonding Company's attempt to question the appointment of Becker as administrator of Harshman was a collateral attack and was improperly made in this proceeding.

We further determine that the court was authorized to make an appointment of an administrator of Daniel I. Harshman for the purpose of filing a final account in the Chambers estate, and this right existed regardless of whether Harshman had any separate estate in his own right.

Sec. 10506-55 GC, is ample authority for our conclusion.

On the second question, claiming imperfections in the Probate Court Records raised by the appointment of Becker, we do not find these of substance.

On or about the time that the application for Becker's appointment was pending, Judge Wiseman, the duly elected and acting Probate Judge, was absent from his office for a few days, and during this interim had selected Judge Martin, of the Common Pleas Court, to act in his stead. Complaint is made that certain entries contained in the journal are unsigned or improperly signed. In our judgment these matters are immaterial. Every Probate Judge is ex officio clerk of his own court, and as such clerk entries made in his designated journals become orders, findings and judgments without the same being signed when sanctioned by the court.

This objection raised by counsel for the Bonding Company is not well founded.

We next consider the question as to the controlling section of the Code relative to exceptions to fiduciary's accounts.

In considering this matter, it is important to have before us certain dates as follows:

The 8th account, to which exceptions are made, was filed May 28, 1928, and the 9th account, to which exceptions were also made, was filed April 9, 1931.

Sec. 10506-40, GC, was enacted and became effective January 1, 1932. This section reads as follows:

"10506-40. Force and effect of the determination. The determination of the probate court on the settlement of an account shall have the same force and effect as a judgment at law or decree in equity, as the particular case may require, and shall be final as to all persons having notice of the hearing, except:

(a) Upon review or appeal according to law; and

(b) When an account is settled in the absence of a person adversely interested, and without actual notice to him, it may be opened on his filing exceptions to the account within eight months after such settlement; and

(c) Upon any settlement of an account all former accounts may be so far opened as to correct a mistake or error therein, on condition, however, that a matter in dispute that has been previously determined by the court shall not be brought in question by either of the parties without leave of the court upon good cause first shown; and

(d) In case of fraud or collusion; and

(e) As against rights which are saved by statute to persons under disability."

This section is based on former §§10834 and 10835, GC. The amended section, 10506-40, provides many identical provisions that were contained in the preceding sections, upon which it is based. In addition it contains other provisions now entirely new. The claim is made that the amended section -40 may not be given application for the reason that the administration of the Robert Chambers estate was a pending proceeding since 1876, and hence this proceeding would be controlled by §26, GC, which provides:

"When a statute is repealed or amended such repeal or amendment shall in no manner affect pending actions, prosecutions or proceedings, civil or criminal, and when a repeal or amendment relates to the remedy it shall not affect pending actions, prosecutions or proceedings unless so expressed, nor shall any repeal or amendment affect causes of such actions, prosecution or proceedings existing at the time of such amendment or repeal unless otherwise expressly provided in the amending or repealing act."

We have no difficulty in determining that §26, GC has no application for the following reasons:

1. The mere fact that an estate was being administered since 1876 would not be such a proceeding as to be connected up with the exceptions to accounts.

The exceptions to accounts are separate proceedings, as might be many other questions that would arise in the settlement of an estate. **In re Estate of Steltenpohl, 7 OO 120.** The mere fact that the exceptions to the 8th and 9th accounts, both of which were settled by the Probate Court prior to the effective date of -40, would not necessarily prevent the amended section being operative. The existing law relative to this question will be found in **37 O.**

Jur. (Statutes) §§192, 193 and 194. The first part of §194 reads as follow:

"As to actions commenced on or after the date an amending or repealing statute relating to the remedy takes effect, the rule in Ohio is that the amended or repealed, not the previous, statute is applicable, in the absence of any contrary expression of intent in the amending or repealing statute, regardless of the time when the cause of action arose."

We therefore determine that **Section 10506-40, GC**, is controlling.

Subdivisions b and c of **Sec. -40** are identical in substance with former §§10834 and 10835, GC.

Counsel for the Surety Company raise the further questions that the exceptors mistake their remedy in seeking to open up accounts 8 and 9, through their exceptions to account No. 10. They urge that the remedy, if any, would be by a separate action and not by exceptions to the earlier approved accounts, to-wit, 8 and 9. Many pages in their brief are devoted to this question and many cases are cited in support of this theory. We have examined each and all of the cases cited, but all are distinguishable from the case at bar. The evolution of the law is set out in great detail. It is quite true that prior to the adoption of the new Probate Code, effective January 1, 1932, probate courts did not have terms nor were they authorized to set aside or modify their judgments as was the right of courts of common pleas under the provisions of §11631 GC.

Neither did probate courts have general equity jurisdiction, although they did have equity powers in the settling of matters properly before the court.

Under the amendment effective January 1, 1932, probate courts have terms of court, as well as equity powers and are authorized to set aside or modify their judgments after term, the same as is authorized in Common Pleas

Courts. The constitutionality of this granting of power to the probate court is not and can not be questioned.

Under subdivisions b and c of §10506-40 GC, as well as under similar provisions contained in §§10834 and 10835, the right to open up former accounts is authorized when the exceptors bring themselves within the provisions of the section.

The first paragraph of Sec. -40 in very positive language declares:

"The determination of the probate court on the settlement of an account shall have the same force and effect as a judgment at law or decree in equity, as the particular case may require, and shall be final as to all persons having notice of the hearing, except;"

Following "except" are subdivisions a, b, c, d, and e. The words "and shall be final as to all persons having notice of the hearing" do not include notice of publication, generally spoken of as constructive notice. This clearly appears from the language of subsequent subdivision b.

The exceptors in the instant case did not have actual notice of the filing and settlement of accounts 8 and 9. Subdivisions b and c are therefore applicable and read as follows:

"(b) When an account is settled in the absence of a person adversely interested, and without actual notice to him, it may be opened on his filing exceptions to the account within eight months after such settlement; and"

Subdivision c is tied in with subdivision b and reads as follows:

"(c) Upon any settlement of an account all former accounts may be so far opened as to correct a mistake or error therein, on condition, however, that a matter in dispute that has been previously determined by the court shall not be brought in question by either of the parties without leave of court upon good cause first shown; and"

Subdivision d is also pertinent, and reads as follows:

"(d) In case of fraud or collusion; and"

It is our determination that the exceptors are rightfully invoking their remedy through exceptions to account No. 10, with request that accounts Nos. 8 and 9 be opened up for correction of errors or mistakes and fraud on the part of Harshman, administrator, in concealing from the court the fact that he did not have the funds on hand as set out in his accounts 8 and 9.

The following cases are cited as supporting our conclusion, some of which are directly in point, others are supporting by analogy.

In re Hartman Estate (Franklin County) unreported; opinion released April, 1939;

In re Estate of Steltenpohl, 7 OO 120;
Marks v Marks, 58 Oh Ap 266;
Watts v Watts, 38 Oh St 482;
Lambright v Lambright, 74 Oh St 198-207;
Fidelity & Guaranty Co. v Wood, 35 Oh Ap 224;
Trustees of Masonic Temple v Emmons, Ex., (Shelby County), 49 Oh Ap 87;
18 O. Jur., page 318, §255.

The case of Johnson v Johnson, 26 Oh St 357, cited by counsel for Bonding Company, answers the claimed application of the rule therein announced by the following, appearing in the opinion:

"We think, therefore, that the provisions of both these subdivisions apply only to judgments and orders in adversary actions or proceedings inter partes, and not to the settlement of accounts of an executor in a probate court. in which, within the meaning of these

subdivisions, there are no parties to succeed or fail, and no record is required to be kept in which the disability or interested defendants should be made to appear."

Another very recent case supporting the procedure is that of **In re Estate of Russell** (Lake County, August 26, 1938) **60 Oh Ap 385**, and also found in **Oh Bar**, under date of June 12, 1939.

Counsel for the Bonding Company also urge the doctrine of laches and estoppel. Many cases are cited in connection with the argument. We have no quarrel with any of the principles announced, but do not find them supporting under the facts of the instant case.

As a predicate for counsels' contention it is urged that the beneficiaries were negligent in not investigating and ascertaining whether or not the fiduciary actually had on hand the moneys and securities with which he charged himself at the time of filing his various accounts.

In general had they pursued the investigation made by the auditor, they could have at all times readily found the present claimed errors and mistakes. The presentation of this principle is not persuasive in the least. In fact, we have no difficulty in determining that it has no merit.

A fiduciary, either selected by the testator or the court, is expected to honestly and faithfully ▬▬▬▬▬ administer his trust, and beneficiaries in the absence of notice to the contrary, are warranted in placing full faith and credit in such fiduciary.

The testator in making his original appointment for the administration of the residuary fund arising under Section 13 of the will, gave the fullest authorization to his appointee to administer the fund, and the beneficiaries would have no right to interfere.

The complaint of laches when considering the factual questions, may very easily be applied to the Bonding Company. This observation, of course, has no legal significance. However, we do venture the reactions we have in this case as well as many others where bondsmen have been compelled to respond in very large amounts. In a recent case determined by us the liability under the bond approached $200,000.00. The bond in the instant case was $190,000.00. The claimed liability is small considering the size of the bond. We are at a loss to know why a bonding company where they assume contingent liabilities in such large amounts, fails to keep in touch with their fiduciary and his operations in the interest of protecting themselves against any loss at all.

This brings us to the factual determination of the several questions raised by the exceptions of both the beneficiaries and the Bonding Company.

We first take up the exceptions to the 8th account, filed May 29, 1928, covering a three year period ▬▬▬▬▬ from January 1, 1925, to December 31, 1927. As heretofore stated, this account was approved by the Probate Court without exceptions having been filed thereto. The account itself as it presented charges and credits and investments on hand, was in all respects correct. The fact developed through an examination and report of the auditor disclosed what are claimed to be mistakes constituting fraud upon the Probate Court through which the account was settled. This auditor, making his examination by order of the Probate Court on application of attorneys for Harshman, administrator de bonis non, found that Harshman had made withdrawals of cash from the assets of the estate to the extent of $2975.00, contrary to law. The auditor based his finding on the claimed fact that Harshman kept his cash in one bank during the entire period of his administration. The daily balance as shown by the bank ledgers, the cash book kept by Harshman and check stubs clearly established a withdrawal from the bank account of amounts totalling $2975.00. This amount was not traced to any investment. The auditor was able to trace and account for the income on all investments. As

to what Harshman did with the $2975.00 during the period following its withdrawal, was not shown. It was put back into the account at the bank in January following the period covered in the 8th account and prior to the actual filing of the 8th account. We agree with the Probate Court that Harshman, Administrator, should be charged with interest on the withdrawals totalling $2975.00 from the date of each item until returned. Had Harshman, the administrator de bonis non, been living at the time of the hearing, it would have been possible through an examination of him as a witness to show full details as to this item. Had he admitted to withdrawing the amount and using the same in his own business or for his own purpose, no question would arise as to his liability for interest on the amount from the time it was withdrawn until it was replaced. If, on the other hand, he made satisfactory showing that he did not appropriate the money to his own use and violated no obligation to invest it, no liability would exist.

During the period covered by this claimed withdrawal there was no statutory provision requiring fiduciaries to keep the moneys in their hands in designated depositories. He might keep the funds in his own safe or a strong box or in other banks and would be within the law.

There is a very strong suspicion that Harshman converted this money to his own use, and taken in connection with the evidence of subsequent defalcations, the court is warranted in finding that there was a defalcation as to the item of $2975.00.

The exceptors also object to other items in the 8th account which the cash book of Harshman shows that he drew out from time to time during the three year period as compensation, and in his 8th account took credit for the sum of $2250.00 as his compensation.

This item is attacked on two grounds:

1. By reason of the claimed defalcation in the sum of $2975.00, the fiduciary would not be entitled to any compensation.

2. That the fiduciary had no right to pay himself compensation except through an allowance by the Probate Court.

The first claim is answered by our finding relative to the $2975.00 item.

The second item would thereby be reduced to the question of interest from the time of such withdrawals for compensation until the date of the filing of the 8th account and the allowance of compensation by the Probate Court.

Had the Probate Court charged the fiduciary Harshman with interest on these withdrawals, we could have very easily followed his findings. However, the court did not so do. Having seen fit to not molest the questions of compensation or the interest thereon, we are unable to say that such action was against the manifest weight of the evidence.

The amount of compensation is peculiarly within the discretion of the Probate Court. This is a provision of §10506-52 GC.

We are inclined to the view that the Probate Court may in its discretion allow compensation where the services are beneficial to the estate, even though there may be some irregularities.

Counsel for the Bonding Company cites the case of **Gamble v McCormick, 1 C.C. 405.** They give the following quotation from the above case:

"Even if there be unfaithful administration of an estate, it will not deprive an executor or an administrator of the right of compensation for his services, so far as they are beneficial to the persons interested in the estate."

This case does not appear in **1 C.C. 405,** nor is the title correct. The correct citation is **Campbell v McCormack, 1 C.C. 504.**

We now consider beneficiaries' exceptions to the 9th account.

Again this account on its face was proper as to charges and credits. The infirmity in the account arises by rea-

son of the fact that Harshman did not have on hand the amount of money with which he was chargeable. The evidence adequately supports the conclusion that Harshman was short in cash the sum of $6033. This amount is chargeable against Harshman, administrator de bonis non, and his bondsmen, together with interest at 6% from the date of such withdrawals.

It appears from the evidence that the amount of $6033.00 is determined from the total of the amount of withdrawals less proper items of credit. In calculating the interest, it will be necessary to consider both the date of withdrawal and the date of allowed credits.

The lower courts also corrected the 9th account by eliminating the claimed credits for compensation. In this finding we agree with the lower court. Interest should be charged at 6% from the respective dates that Harshman drew the same as claimed compensation. This principle of law is evolved from the theory of simple justice.

Whenever a fiduciary converts to his own use funds belonging to his trust, he is not administering the same for the interest of the beneficiaries. To a higher or less degree he loses sight of his obligation to the trust and considers his own needs paramount. Such an individual is not entitled to any compensation where the amount of such misappropriation is large and must necessarily have been intentional with knowledge of wrongdoing.

Counsel for the Bonding Company complain as to the interest charge of 6% and argue that an analysis of the fiduciary's investment would disclose that he was not able to obtain a greater income than an average of 4%. The law is well recognized that anyone misappropriating money is chargeable not only with the amount misappropriated but with interest at the legal rate. A malefactor can not complain about a charge of a legal rate of interest.

The Bonding Company file exceptions to the 10th account on the ground that compensation was not allowed.

We have no hesitancy in determining that under the state of record, neither the Probate Court nor the Court of Common Pleas could have made a contrary order. What has heretofore been stated relative to the compensation claimed under the 9th account, will apply here.

Any amounts received by the fiduciary under the 9th and 10th accounts would be improper and should be a charge against Harshman, together with interest at the legal rate.

All the other findings made by the lower courts relative to the 10th account are affirmed, with the exception that the $750.00 item should be changed in date to May 2, 1935 for the purpose of calculating interest.

The fiduciary exceptors, et al., before the hearing in the Probate Court filed supplemental exceptions. This relates to two notes, one of which was claimed to be an obligation of Harshman. Both were mortgage notes, had been past due for a long time and in both instances losses will be sustained by reason of the depreciated value of the real estate securing such notes. The Harshman note was signed by Mrs. Harshman and her husband, who was also the fiduciary. The mortgage was given on property in the name of Mrs. Harshman. It appears from the evidence that this Harshman property was originally in the name of Mr. Harshman, and was transferred to his wife a day or two prior to the giving of the mortgage. As a rule loans to wife are not to be encouraged. It is inferable at the time that the real estate on both mortgages amply secured the loan. The trial court held that the fiduciary was not negligent in failing to collect the note after it became due, and that the depreciated value of the real estate was due entirely to the financial depression.

Some cases have been cited holding fiduciaries liable for failure to collect mortgage notes within a reasonable period following their due date. The situation in the instant case is to be distinguished from the facts of the cited cases. In the cases cited there was not anything similar to Section 13 of the

will of Robert Chambers. In these reported cases it was the plain duty of the administrator to promptly convert the assets into cash and make distribution. In the instant case it was the duty of the fiduciary to make investments, and nothing less than negligence would make such fiduciary liable for losses. It is not unusual, in fact we might say it is the rule, that individuals or entities engaged in loaning money are not particularly solictious about the payment of the principal, although they do want their interest paid promptly. So far as the value of the real estate adequately secured the loan, it could not be said that Harshman was guilty of any negligence in his failure to collect same, even though the note was past due. It is a matter of common knowledge that the depression hit this country very quickly and very hard. We would not care to say that the failure to institute proceedings for foreclosure at the first sign of a depression, would be negligence. It may be properly stated that the first signs were not at the time recognizable. Men in high places thought that recovery was just around the corner. We are not inclined to disturb the findings of the lower court.

Following the appeal from the Probate Court to the Common Pleas Court for hearing de novo, exceptors sought and obtained leave to file an amended supplementary exception, wherein complaint was made as to losses that would follow on the third mortgage note. The evidence supporting this exception is very similar as to the other two mortgages and the observations made relative to them will apply to this.

Expenses of audit to be charged against Harshman, Administrator d.b.n. for reasons set out in opinions of lower courts.

Reformation of the judgment as to the items referred to may be made, otherwise the judgment of the lower court will be affirmed. Costs in this court will be divided equally between the appellant and the cross-appellant.

HORNBECK, PJ. & GEIGER, J., concur.

## APPLICATION FOR REHEARING

No. 1543. Decided July 19, 1939

BY THE COURT:

The above entitled cause is now being determined on two applications for rehearing, one by the appellant and the other by the cross-appellants.

Very able and comprehensive memoranda are presented in support of the respective applications.

Considering first the application of the appellant, The Massachusetts Bonding & Insurance Company, would say that we find no new propositions submitted other than were considered in our original opinion. The memorandum is really a reargument of the same propositions originally presented.

We hold to our original views, therefore the application will be overruled.

Now considering the application of cross-appellants for rehearing, counsel express the view that we probably did not understand their contention concerning the mortgage note given by Mrs. Harshman and jointly executed by Harshman, administrator.

In re-examining our opinion, we find we did not expressly answer this contention, although we had it in mind and our failure was simply an inadvertence.

We have re-examined the four cases cited in the application, all of which were presented in the original briefs.

It is our judgment that the instant case may be readily distinguished from each of the four cases cited.

We have also again examined §10506-49, GC.

We do not intend to establish the proposition "that a fiduciary may with impunity lend trust funds to himself and to members of his family, and that such loan constitutes a legal and proper investment of such funds."

We think the law is well established that a fiduciary acting as a trustee

432

may not loan money to himself; further that any loaning of ▮▮▮▮ money to the wife of such trustee under a proper showing may be voidable but it is not necessarily absolutely void.

At this late date and under exceptions to the account, we do not think that the question is properly presented.

The application for rehearing of the cross-appellants will be denied.

HORNBECK, PJ., GEIGER & BARNES, JJ., concur.