SCHIEBLE v PHALEN

SCHIEBLE v MASSACHUSETTS
BONDING & INSURANCE CO.

CALEF v PHALEN

CALEF v MASSACHUSETTS BONDING
& INSURANCE CO.

Ohio Appeals, 2nd Dist, Montgomery Co.

Nos. 1619, 1620, 1621.
Decided July 16, 1940.

Cowden, Cowden & Crew, Dayton, for appellants.

Clifford R. Curtner, Dayton, for appellee.

## OPINION

By HORNBECK, PJ.

These three appeals are noted on questions of law. Common Pleas Court No. 38557 is carried in this court under appeal No. 1619. Common Pleas Court No. 48091 under No. 1620 and Common Pleas Court No. 48092 is carried in this court as No. 1621.

Margaret J. Schieble and Mary C. Calef, daughters of Robert Chambers, were by the will of Chambers named first donees in tail of three parcels of real estate therein described. In one piece Margaret Schieble had a full estate in fee tail, in another Mary C. Calef had such an estate and in the third, each received an undivided one-half interest in fee tail.

By appropriate proceedings in the Probate Court all of these interests were sold under the disentailing statute and the proceeds of the separate sales of the tracts of real estate were placed in trust and Daniel I. Harshman appointed as trustee for each fund.

The funds in the trust in No. 1619 arose from the sale of the real estate in

which Margaret J. Schieble received the estate. The funds in the trust in No. 1620 arose from the sale of the real estate in which Mary C. Calef received the estate and the funds in the trust in No. 1621 arose from the sale of the real estate in which Margaret J. Schieble and Mary C. Calef jointly received the estate.

Harshman for a number of years acted as trustee, filed his accounts and properly administered the trusts. The last account filed by Harshman was in 1931. In 1936, it being suggested to the court that there was a possible shortage of the assets of said trusts, the court on September 14, 1936, ordered an audit made of the books and records in all three trusts and such audit was made. In May, 1937, the life tenants filed applications for the removal of Harshman, Trustee, but before these applications were heard, Harshman committed suicide. Whereupon, on May 14, 1937, the Common Pleas Court appointed the Winters National Bank & Trust Company of Dayton, Ohio, successor trustee to Harshman in all three estates.

In June, 1937, Phillip R. Becker was named administrator of the estate of Daniel I. Harshman, deceased, by the Probate Court of Montgomery County, and soon thereafter filed on behalf of Harshman, Trustee, accounts in all three of the trusts.

Each of the accounts showed a substantial shortage in the assets of the trust. The owners of the life estates and Harshman's successor trustee excepted to each of the final accounts of Becker, administrator. The court set the exceptions down for hearing and ordered and directed that the Massachusetts Bonding & Insurance Company surety on Harshman's bonds as trustee, be served by registered mail with notice of the filing of said exceptions and the date of the hearing of the same which service was duly made and acknowledged. The Bonding Company in each case stating that it appeared specially for the purpose of the demurrer and not entering a general appearance demurred to the exception for the reason "that same do not state

a cause of action and that the court has no jurisdiction of the subject of the action."

The entry overruling the demurrer in No. 1619 recites that it is directed to the sixth and final account of Daniel I. Harshman, as trustee and to the exceptions filed by Margaret J. Schieble, et al., to said sixth and final report of account. The Bonding & Insurance Company also moved to strike the sixth and final account of Daniel I. Harshman, filed by Phillip R. Becker, administrator. Like entries on demurrers were filed in cases Nos. 1620 and 1621. The Bonding & Insurance Company also, in its exceptions to each of the accounts filed by Becker, administrator, asserted that the account was incorrect in that it made no provision or allowance for compensation of Harshman for his services as administrator, d.b.n.w.w.a., for the accounting period from the filing and settlement of the prior account up to and including the date of appointment of the successor administrator.

Around this claim of the right of Harshman to compensation for his services as administrator for the period just set forth revolves the conflicting claims of the parties to this appeal. The matter eventually came on for hearing on the exceptions of the respective parties and the court under date of June 9, 1939, found that in each trust, Harshman, as trustee, had made substantial illegal withdrawals of cash from the assets of the trust; that in No. 1619, he had made net illegal withdrawals in the sum of $566.00. The court further found that the audit theretofore made was made necessary by the conduct of Harshman in making illegal withdrawals and that the cost of the audit was $50.00, which sum was found to be due and owing to the successor trustee.

In appeal No. 1620, the court found illegal withdrawals of cash from the assets of the trust fund in the net sum of $566.00 and made a finding and order for the payment of $50.00 with interest for the audit in said trust.

In case No. 1621 the court found that the net illegal withdrawals made by Harshman, trustee, was in the sum

of $561.00 and found and ordered that the sum of $50.00 should be paid to the successor trustee for the cost of the audit. In all of these entries Harshman, Trustee, was charged with interest at six per cent from the dates of the respective withdrawals and the total was found to be due and owing to the successor trustee. It should be noted that no one of these audits did more than to make a finding of the net illegal withdrawals of Harshman, Trustee, and that they were owing to his successor and there was no further order respecting them.

In each of the foregoing entries the court expressly found that,

"The question of compensation due to the said Daniel I. Harshman is not a proper question to be presented to the court at this time."

Following the action by the trial judge on the various exceptions to the account of Becker, administrator, and exceptions to the exceptions of the life tenants to the account, the Bonding & Insurance Company, without admission of liability, tendered in case No. 1619 the sum of $615.00 on behalf of Harshman, Trustee, in case No. 1620 the sum of $550.00 and in case No. 1621 the sum of $550.00. In each instance the sum tendered was in compromise and settlement of the claimed liability of the Bonding Company and in full payment of any claim that might be asserted against it.

The court after hearing acted upon this application of the Bonding Company and identical entries except as to the respective amounts were journalized in each case.

A typical entry taken from No. 1619 provides:

"This matter came on to be heard before the court upon application of the Massachusetts Bonding & Insurance Company, surety for Daniel I. Harshman, former trustee and now deceased, to compromise and settle the proceeds and claims arising under and by virtue of the exceptions to the final account of said Daniel I. Harshman, and

the claims for reimbursement of funds misapplied herein and for the reasons in said application set forth. And the court being fully advised in the premises, and in due consideration of same, finds that it has no jurisdiction or authority to require the present trustee to make a compromise settlement of the loss involved.

The court further finds that if there is tendered to the trust fund the sum of Six Hundred Fifteen Dollars ($615) on behalf of said deceased trustee, an allowance of credit for compensation to the said deceased trustee, in the sum of One Hundred Seventy and 17/100 Dollars ($170.17) will be made by the court.

It is hereby ordered that upon the payment of court costs of Twelve and 99/100 Dollars ($12.99) and the sum of Six Hundred Fifteen Dollars ($615.00), with interest thereon at six per cent (6%) per annum from July 1, 1939 to the time of tender to the said trustee herein, said trustee, is hereby ordered to accept such sum in full settlement and to execute its full release therefor."

This order and similar orders in cases No. 1620 and 1621 are the judgments or orders to which the notices of appeal are directed. After the court had made the orders heretofore quoted counsel for the holders of the life intersts and for the successor trustee filed a motion for new trial in each case which was overruled.

Appellants note five assignments of error.

(1) In allowing any compensation for the services of Harshman, Trustee.

(2) In making excessive allowance of compensation for the services of the former trustee.

(3) In applying the former trustee's allowance for compensation as a credit upon the liability of his surety.

(4) In overruling appellant's motion for new trial.

(5) The order appealed from is not sustained by sufficient evidence and is contrary to law.

Appellant seeks the reversal of the orders of the trial judge of date, November 25, 1939, and final judgment in

this court overruling surety's application to compromise the claims against the Bonding Company, direction that no compensation be allowed for the benefit of Harshman, Trustee, and ordering that appellants recover of the administrator of the former trustee's estate and the surety herein the amounts found due by the lower court in its finding entries of June 9, 1939.

It should be observed at the outset that the first two specific assignments of error are directed to the action of the court in allowing compensation for the services of Harshman, Trustee, first in allowing any sum and second, if we hold against this claim, in allowing an excessive sum. If the first assignment is well taken the second need not be considered.

We have examined the judgment entry and note that the specific order in No. 1619, typical of all three cases, is that the trustee accept the sum set out in full settlement of his claim against the Bonding Company and to execute a full release therefor. This concluding sentence in the entry is the only part that is in the form of a judicial order. This order, of course, is grounded upon the paragraph which precedes it which is to effect that, if there is tendered to the trust fund the sum of $615.00 on behalf of said deceased trustee, an allowance of credit for compensation to the said deceased trustee in the sum of $170.17 will be made by the court.

We are unable to conclude that there has been any final order that the Trustee be allowed credit for compensation. The final step has not been taken and carried into entry which would be to effect that the tender having been made, it is now ordered that a credit be allowed on behalf of the successor of Harshman, Trustee, for his compensation. Unless and until this is done the court has not made the essential judicial pronouncement upon which a review as to the allowance of compensation may be predicated. It is obvious that the court has done that which is essentially the basis of a final order but it has not been made.

Notwithstanding the fact that there is no final order respecting the payment of compensation for services rendered by Harshman, Trustee, the final order which is made is so inextricably connected with the finding respecting compensation that, if compensation cannot properly be allowed, we would reverse the order as made as being entered upon a misconception of the principle of law controlling. This is true because obviously, if the surety pays into court the respective amounts required by it to be paid by the order in each case, it will thereby be released from any other or further liability whatever on its bond. Thus, without respect to any further order that might be made wherein Harshman would be denied compensation and his liability to the trust thereby increased there would be no source from which this shortage could be recouped.

Then, too, the finding that compensation should be allowed for the services of Harshman, is so essentially a part of the orders respecting the settlement of the claims against the surety company that it is inconceivable that the court would in any event make any final order in conflict with the finding entries.

We cannot say that the court erred in awarding compensation for the services of Harshman in the respective trusts nor that the amounts fixed are excessive.

Our attention is specially directed to our decision in **Re: Estate of Chambers, 30 Abs 430** and particularly to the language of Judge Barnes in the opinion wherein he said,

"Whenever a fiduciary converts to his own use funds belonging to his trust, he it not administering the same for the interest of the beneficiaries. To a higher or less degree he loses sight of his obligation to the trust and considers his own needs paramount. Such individual is not entitled to any compensation where the amount of such misappropriation is large and must necessarily have been intentional with knowledge of wrong doing."

It should be observed that this language of Judge Barnes was not necessary to the judgment which was entered. In the Chambers case the trial judge had refused to allow compensation and we, therefore, were passing upon the validity of this order. Obviously the only question which we were required to decide was whether or not the court erred in the order under review, but we have no apology for the language of Judge Barnes which has been quoted. We are satisfied that it states the general rule. In the Chambers case the court neither charged the fiduciary interest on the shortage nor allowed him compensation. The defalcation was large. Judge Barnes recognizes the principle, which we hereinafter adopt, at page 429 of the Chambers opinion in which he said,

"We are inclined to the view that the Probate Court may in its discretion allow compensation where the services are beneficial to the estate, even though there may be some irregularities."

and cites **Campbell v McCormick, 1 O. C. C. 504.**

Our examination of many cases is convincing that in a situation such as presented in the instant case the trial judge has discretion to award compensation to a fiduciary notwithstanding his defalcation if by his management the trust has been benefitted. Of course, as soon as it appears that a fiduciary has been unfaithful to his trust in that he has misappropriated funds thereof he loses any assured right to favorable consideration from the court to which he is required to account. However, every case must be determined upon its own peculiar facts and it is a safer rule to grant to the court which has jurisdiction of the trust wide discretion in directing and controlling the settlement of the trustee's accounts.

The purpose of the court in this case, to expedite a settlement of all of the claims against the surety company, terminate litigation and further expenses, and to permit the trusts to be carried on in an orderly manner, is apparent from his written decision which is before us. It appears that the total defalcation of the Trustee as compared to the total assets of the trusts was not large and that as to the greater part of the funds and investments he had held them safely and managed them with judgment and to the benefit of the estates.

In case No. 1619 the total charges indicated by the sixth and final account of Becker, administrator for Harshman, Trustee, are the sum of $9,089.47. The total shortage in this estate without interest is $566.00. The income reported in this account was $1329.73, to which must now be added the interest at six per cent on the shortage in the funds of the trust.

In case No. 1620 the total charges are $21,390.85. The shortage $566.00 with interest. The income is $1898.98 to which must be added the interest which the court required to be charged against Harshman, Trustee.

In case No. 1621, the total charges carried in the final accounts are $21,390.45. The shortage $561.00 and interest. The investment return was $1982 to which must be added interest for which the court required Harshman, Trustee, to account.

In case No. 1619 there was turned over to Harshman's successor trustee more than $11,000.00, in No. 1620, $7,480.31, in No. 1621, more than $7,000.00. The net income on the three trusts was four per cent of the principle sum invested. Thus the court required Harshman, Trustee, to pay approximately two per cent more on the money which he had taken from the funds than he was able to earn on that properly invested. There was no objection interposed to the management of the funds of the trust which Harshman handled and invested.

The court found that Harshman should be awarded compensation in case No. 1619 in the sum of $170.17, in No. 1620, $217.63 and in No. 1621, $214.17. The total compensation is a little in excess of ten per cent of the total amount of money handled in the administration of the trusts for the per-

iod covered by the final accounts. We do not think that this ▮▮▮▮ amount is excessive in view of the character of the trusts and the latitude which must be granted to the court which controls the administration of such trusts. It is said that the sum is in excess of the amount fixed by rule in Common Pleas Court which rule is not before us. Without definite proof that such a rule had been adopted with application to the trusts such as the ones under consideration, we would hesitate to supplant §10506-52 GC which vests full authority in the court to fix the allowance to fiduciaries for their services and expenses in executing their trusts as it deems proper.

Counsel for the Bonding Company advance the argument that some different consideration should be given to the allowance of compensation for Harshman's services because he had drawn this compensation prior to the time of the settlement of the account in which it was set forth. Some discussion is also had to the effect that he was not entitled to it because he had drawn it before the court had formally ordered it to be made. This latter contention involves only an irregularity which we would give no consideration, if it can be said that he was rightfully entitled to any allowance. Nor does the fact that he had withdrawn the compensation before it had been formally ordered advantage the position of his successor in any particular.

The conclusion reached by the trial judge represented by the order complained of is in each instance that it is to the best interests of the trust that the trustee be directed to accept from the Bonding Company the respective sums of money set forth as full settlement of the claims against said company. The method of computation by which the sums are reached appears to be by reducing the net illegal withdrawals with interest by an amount of compensation to be awarded on behalf of Harshman, Trustee, in each trust.

If, however, the decree can definitely be supported in part upon the right to award compensation in the sum fixed and in part for other reasons it should not be disturbed.

The trial court took full cognizance of the fact that he was dealing with the surety of Harshman and we must at all times keep that in mind. The surety had a right to rely upon any and all defenses affecting its liability and the extent thereof. In the proceedings under review the court had no power by its decree to compel the surety to pay any sum into court without other or further proceedings. So that the offer of the surety company was, as its terms implied, nothing more nor less than a proposition of settlement. Counsel for appellants urge that the court had no authority to countenance such a settlement and apparently the trial judge agreed with this proposition. We do not support it.

We are of opinion, that the trial court had a right in view of all of the circumstances to authorize ▮▮▮▮ a settlement to be made with the surety upon any reasonable basis and all elements which would enter into the question of the ultimate recovery and the amount thereof was proper in determining whether it was advisable to authorize the successor trustee to accept a sum less than the full amount found to be due from Harshman without allowance of compensation. As a matter of fact, although the court expressly determines the amount which the surety company should pay upon the basis of reduction only of compensation for Harshman, Trustee, it is obvious that at all times he had in mind the advisability of settlement.

We would not hesitate to support the trial judge had he refused to allow any compensation for Harshman, Trustee, in view of his defalcation and expressed violation of the law but we cannot say that under all the facts in this case he clearly abused his discretion in making allowance to the Trustee in the amounts heretofore set out.

This disposes of the first two assignments of error.

We have examined all of the cases cited by appellants. **Overturf v Gerlach, 62 Oh St 127,** merely holds that,

"Until allowed by the Probate Court, the compensation and commissions of an administrator or executor to which he may be entitled in the settlement of an estate, cannot be attached or, by any similar process, appropriated to the payment of his claim by a creditor of such executor or administrator."

Nothing is said in the opinion germane to our immediate question except this at page 130,

"Overturf, whatever the assets of the two estates may be, may not be entitled to the compensation and commissions provided by law at his final settlement. This will depend upon the judgment and allowance of the Probate Court. By reason of mal-administration he may be entitled to nothing, and nothing may be allowed him."

There is no adjudication in this case to effect that in all events when there has been mal-administration of an estate there may be no allowance to an administrator or executor.

**In Re Estate of Stafford, 14 Abs 18.** In this case we were reviewing the action of a probate judge who, upon application, had refused to permit an administrator to withdraw his first account which he had filed or to amend inventory previously filed and to order re-appraisement and in removing the administrator, wherein it was found that the administrator had used certain certificates of deposit for his own benefit. Upon the question of compensation we said,

"It would be necessary for this court to find that the trial court had abused its discretion in refusing such allowance before we could modify the ruling of the trial court in this respect."

And we refused to so hold because of the court's finding of the manner in which the administrator had handled the affairs of the estate. This decision is not authority against our holding on the instant case.

**Phares v Lincoln National Bank, Admr., 42 Oh Ap 433,** holds, insofar as germane to our question that,

"Special administrator who refused to deliver estate forthwith to administrator with will annexed was entitled to no compensation or fees."

The court was enforcing the express terms of §10621 GC, now §10509-15 GC, which make it a condition precedent to the allowance of compensation that the administrator forthwith deliver over to the executor or administrator who supercedes him the property and effects of the estate.

In re: Harbeck's Estate, 254 N.Y.S. 312, the trustee by his grossly improvident investment and breach of trust in purchasing securities from himself and committing criminal offenses, depreciated the corpus of the estate from $55,000.00 to $32,000.00, Held that the court should exercise its discretion against allowance of any commission to the trustee.

In Re: Polansky, 41F(2d) 547 the reviewing court affirmed an order of a referee that compensation should be denied trustee where he had deliberately violated the state law in four particulars. The court there supported a judgment very much like the judgment which we affirmed in the Chambers Estate, supra.

Lewis v Ingram, 57 F. (2d) 463 merely applied the general rule that an unfaithful trustee is not entitled to any compensation for his services and the court found the facts there such as required application of the rule.

A leading case which is made the subject of an annotation is Succession of Frank Gandolfo; Lee Gandolfo, et, Appellants, 83 A. L. R. 720, annotation page 726. The general rule is announced as we have heretofore stated it and it is supported by cases from many states but, following the general rule, there are cited many authorities illustrating the exceptions to the rule. In setting out the exceptions it is said,

"Whether or not the misconduct of the representative is such as to warrant the refusal of commission is a matter usually resting within the discretion of the court and commissions may be allowed in a proper case, although the representative was guilty of misconduct or mismanagement."

Authorities are cited from a dozen states and are found at page 740 of the annotation and also at page 741 where it is held that,

"Where it appears that the estate derived benefit from the administration or suffered no loss due to the representative's misconduct, commissions may be allowed."

Notably In Re Honsberger, 10 (Ont.) Rep. 521, where an executor used the funds of an estate for his own purposes, it was held,

"That he was nevertheless entitled to commissions, it appearing that his services were of value to the estate, and that he paid to the estate the loss of interest attributable to his use of the funds."

At page 744 are cited Re: Mowery (Ia.) 232 N. W.,

"Where the executor failed to keep proper accounts, appropriated funds of the estate to his own use without authority and commingled the trust funds with his private funds, it was held that it was a matter within the court's discretion to deny the executor any compensation for his services.'"

Since this annotation thirty-one supplemental decisions have been reported in the United States, many of which we have examined. They are decided upon the facts appearing in each case and in some of them the general rule has been given application and in others the exceptions have been applied. The third assignment is that the court erred in applying the former trustee's allowance for compensation as a credit upon the liability of his surety.

It is urged by appellant that the compensation allowed for Harshman is an asset of his estate and should be paid to his administrator and should not have been applied as a credit to reduce the amount to be paid by the surety. We appreciate the principle contended for but do not feel it has application here. The court was determining to what extent Harshman should be required to account as Trustee as related to the specific trusts. The order of the court does not contemplate that the surety company pay in to the trusts any more than the respective sums fixed in the entries which amounts do not include the compensation to be allowed for the benefit of Harshman, Trustee.

We may assume, although the record does not disclose, that there are claims against the Harshman estate other than those connected with these trusts. The compensation allowed Harshman amounts to nothing more than an approval that there may be retained for his benefit the amount of his compensation as fixed. He will draw no new money from the trusts and it amounts to nothing more than a credit for the respective sums which shall be allowed by the susccessor trustee. The theory of the entry in the trial court is not that there is any reimbursement to the surety of its total obligation but that it is an acceptance of a certain sum in full for its liability. We see no insurmountable objection to the action of the court in the awarding of compensation for the benefit of Harshman and permitting the successor trustee to credit him for that amount. The allowance did not of necessity properly come into the hands of Harshman's administrator.

We do not find the third assignment of error supported and by reason of our holding as to the first three assignments the fourth and fifth assignments must be overruled.

Counsel for appellee again urge upon the court the claim heretofore made in motions to strike the bill of exceptions,

the assignments of error and brief of appellants from the file. We have again examined this question and are of opinion that we were correct in our former ruling. This is true not only upon the form of the appeals but particularly because of the agreement of counsel for the Bonding Company which is found at page 5 of the bill of exceptions. It there appears that the desirability of taking the testimony in all three cases at the same time was presented by counsel for appellants to the court and counsel for appellee expressed a willingness that this be done, if the germane testimony in each case could be properly considered in that case.

In view of the questions presented upon this appeal we see no difficulty whatever in considering the evidence found in the bill in its proper light as related to each case and without any prejudice to appellees.

The judgment will be affirmed.

GEIGER and BARNES, JJ., concur.